UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

--------------------------------------------------------------------------------X

AMANDA CESARE and STACY BUFFHAM,

                              Plaintiffs,                         CIVIL ACTION NO.

    -against-

                                                            <u>COMPLAINT</u>

PACT MSO, LLC and LAURA LACASCIA-EHLERT
in her personal and professional capacities,               <u>Jury Trial Demanded</u>

                              Defendants.           FEBRUARY 24, 2023

--------------------------------------------------------------------------------X

      The Plaintiffs AMANDA CESARE and STACY BUFFHAM by and through their attorneys, BERLINGIERI LAW, PLLC, as and for their Complaint in this action against the Defendants PACT MSO, LLC and LAURA LACASCIA-EHLERT in her personal and professional capacities, respectfully alleges upon information and belief as follows:

### NATURE OF CASE

1.   This is a civil action for damages and equitable relief based upon willful violations that Defendant committed of Plaintiffs' rights guaranteed to them by federal and state law, andcomplains for causes of action of: (i) discrimination based on religion under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.§ 2000e *et seq.,* as amended ("Title VII"); (ii) retaliation under the Title VII; (iii) discrimination based on disability under the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA"); (iv) retaliation under the ADA; (v) discrimination based on disability and religion under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. ("CEFPA"); (vi) retaliation under CEFPA; (vii) Negligent Supervision, Hiring and Training; (viii) Negligence *Respondeat Superior*, (ix) Negligent Infliction of Emotional Distress; (x) Intentional Infliction of Emotional Distress; and (xi) any other claims(s) that can be inferred from the facts set forth herein.

2.     Plaintiffs seeks monetary relief including, but not limited to: compensatory and punitive damages; attorney's fees and the costs of this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

3.     Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction as this case involves a Federal under the 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. § 12101 *et seq.*, 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5.     This Court has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. §1367 (a).

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b). The acts and transactions complained of herein occurred in this District, Plaintiffs resides and resided in this District during the course of her employment, and Defendants were and are located in this District.

7.     Plaintiffs filed claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO") dual filed with the Equal Employment Opportunity Commission ("EEOC") on or about November 9, 2021 (for Plaintiff Cesare) and on or about February 9, 2022 (for Plaintiff Buffham), against Defendant PACT MSO, LLC (CHRO Case Nos. 2230246; 2230386– EEOC Nos. 16A-2022-00234;16A-2022-00515) respectively.

8.     On November 30, 2022, the EEOC, issued Plaintiff Buffham a Notice of Right to Sue and on December 23, 2022 issued Plaintiff Amanda Cesare a Notice of Right to Sue, annexed hereto as **Exhibit A**. On November 29, 2022, and on December 22, 2022 the CHRO issued Plaintiffs Releases of Jurisdiction respectively, annexed hereto as **Exhibit B**.

## THE PARTIES

9.    Plaintiffs Amanda Cesare was and is a resident of the State of Connecticut at all relevant times herein resided in this District.

10.    Plaintiffs Stacy Buffham was and is a resident of the State of Connecticut at all relevant times herein resided in this District.

11.    Defendant PACT MSO, LLC ("PACT") is a Connecticut limited liability company, headquartered at 323 East Main Street, Suite 1B, Branford, CT 06405.

12.    Upon information and belief, at all times relevant to this Complaint, Defendant PACT maintained more than (20) employees.

13.    Upon information and belief, Laura LaCascia-Ehlert ("Ms. LaCascia-Ehlert"), ("Dr. Eadie"), was and is the Defendant PACT's Human Resources Director and was and is a resident of the State of Connecticut.

14.    All defendants named above are collectively herein referenced as ("Defendants").

## BACKGROUND FACTS

15.    Defendant PACT Health is an employer within the meaning of the ADA, Title VII, and Connecticut Fair Employment Practices Act, C.G.S. § 46a-58(a), et seq.

16.    PACT MSO operates medical practice and health services to the public in Connecticut.

17.    As part of its extensive medical practice, PACT MSO operates Gastroenterology medical facilities at 2200 Whitney Avenue, Suite 330, 360, & 380 Hamden, CT 06518, 40 Commerce Park, Milford, CT 06460, and 1591 Boston Post Road, Suite 260, Guilford, CT 06437 as a Management Services Organization or (MSO).

18.    Plaintiffs worked at Defendant PACT's at 2200 Whitney Avenue, Suite 370, Hamden, Connecticut location, primarily.

**Amanda Cesare**

19.    PACT employed Plaintiff as a Medical Assistant (MA) commencing on or about September 1, 2012 until on or about September 30, 2021 until her termination.

20.    Plaintiff Cesare has worked at all of the PACT locations during her employment, however worked primarily at the Hamden, Connecticut location up until the time of her termination.

21.    Plaintiff Cesare's religion is Christian (Catholic).

22.    Plaintiff Cesare disclosed to PACT that she was a person of faith

23.    Plaintiff Cesare maintains sincerely held religious beliefs that do not allow her to be vaccinated.

24.    In addition to being medical diagnosed as allergic to vaccines, Plaintiff Cesare is also unvaccinated from the COVID-19 virus and refuses to take the vaccine due to her sincerely held religious beliefs but would use a mask and submit to weekly testing as a feasible alternative.

25.    Plaintiff Cesare disclosed to PACT that she suffers from a disability (egg, and vaccine allergies) over the course of her employment and regularly sought medical accommodation for an exemption to the yearly PACT mandated flu vaccine.

26.    In fact, most recently on or about September 22, 2020, Plaintiff Cesare submitted a medical accommodation for an exemption for the "Flu Shot" vaccine and submitted a medical note dated September 21, 2020, from her care provider stating "She [Plaintiff Cesare] is allergic to the flu vaccine." PACT was on notice that Plaintiff Cesare had a vaccine allergy.

27.    PACT granted Plaintiff Cesare's 2020 medical accommodation request for a flu vaccine exemption and in years past.

28.    Plaintiff Cesare had a standing vaccine exemption because of her medical allergic

4

condition with PACT.

29.     PACT was aware of Plaintiff Cesare's vaccine allergy.

30.     In or around August 2021, PACT announced that it would be mandating the COVID-19 vaccine for all of its employees and set a deadline for employee submissions for request for exemptions to the vaccine.

31.     In or around August 12, 2021, Plaintiff Cesare emailed her religious accommodation request to PACT's Human Resources Director, Laura LaCascia-Ehlert ("Ms. LaCascia-Ehlert").

32.     In Plaintiff Cesare's August 12, 2021 request for religious accommodation Plaintiff Cesare expressed to PACT that she could not be vaccinated due to her sincere deeply held religious beliefs such as "I believe in "My rights, My body" and "It is a core part of our faith that life has dignity from the moment of conception. To kill such life and use it for medical experimentation violates that dignity in a profound manner."

33.     Ms. LaCascia-Ehlert mishandled Plaintiff Cesare's request for religious accommodation on August 12, 2021 as she failed to submit the request from Plaintiff Cesare purposefully or negligently to the PACT's committee.

34.     On or about August 17, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Cesare to confirm that PACT had received Plaintiff Cesare's medical accommodation request stating "I have received your request for the medical exemption. This will not be sent to the committee because 1) it has passed the deadline of 8/13@ 5pm, 2) you did not submit the medical exemption form, and 3) did you provide a note from your physician. Medical history notes will not suffice and cannot be submitted to the committee. Most important the fax number you used was for the billing department. This is not a confidential fax line. Please send any personal information directly to the HR fax number listed on my signature line of every single email and on the ESS

home page."

35.    PACT was discriminatory towards Plaintiff Cesare's medical accommodation request and would not extend its deadline for such submissions past August 13, 2021.

36.    Ms. LaCascia-Ehlert initially failed to send Plaintiff Cesare's request to the PACT's committee determining the accommodation requests for COVID 19 vaccine exemptions, and PACT promised a response to the employee seeking accommodation on August 20, 2021.

37.    On August 23, 2021, Plaintiff Cesare emailed Ms. LaCascia-Ehlert to complain that she had yet to receive a response from PACT's committee on her submitted religious exemption request, and that she was suffering from anxiety from not receiving a response from PACT by August 20, 2021 as promised.

38.    On August 23, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Cesare back quickly and falsely accused her of failing to submit a religious accommodation request to Plaintiff Cesare at all.

39.    On August 23, 2021, Plaintiff Cesare emailed Ms. LaCascia-Ehlert and reminded Ms. LaCascia-Ehlert that she had emailed her a religious accommodation request for the COVID 19 vaccine back on August 12, 2021 and resent her the email with an attached request for accommodation entitled "Follow up note".

40.    Plaintiff Cesare's Follow up note requested for an exemption to the COVID 19 vaccine requirement for three reasons (1) a religious accommodation request based on sincerely held religious beliefs (2) Plaintiff Cesare's hormone medical condition and undiagnosed symptomatic medical condition and fertility issues and Polycystic Ovarian Syndrome (PCOS) (3) and Plaintiff Cesare's egg allergy and standing flu vaccine exemption with PACT for 2020 and years past.

41.    In or around August 25, 2021, Ms. LaCascia-Ehlert requested more information for her religious accommodation request for documentation from Plaintiff Cesare's pastor/priest.

42.    In or around August 25, 2021,  Plaintiff Cesare informed Ms. LaCascia-Ehlert that Plaintiff Cesare and her fiancé both tested positive for COVID-19 and that she was unable to see her priest for the religious documentation PACT requested.

43.    In or around August 27, 2021, Ms. LaCascia-Ehlert requested that Plaintiff Cesare have her pastor "fax over the letter directly" to Ms. LaCascia-Ehlert by Monday August 30, 2021.

44.    In or around August 27, 2021,  Plaintiff Cesare informed Ms. LaCascia-Ehlert that Plaintiff Cesare could not see her priest because she was quarantine from her COVID-19 positive test result.

45.    In or around August 27, 2021, Ms. LaCascia-Ehlert exerted undue scrutiny and pressure on Plaintiff Cesare and requested that Plaintiff Cesare speak with her pastor on the phone and fax a letter to her.

46.    n or around August 30, 2021, Ms. LaCascia-Ehlert asked Plaintiff Cesare whether she planned on meeting with her priest when she was able to do so, to which Plaintiff Cesare responded that she would meet with her priest for the requested religious letter as soon as possible.

47.    In or around August 30, 2021, Plaintiff Cesare provided PACT with an additional religious accommodation request letter from her priest.

48.    In or around September 1, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Cesare to inform her that " Your request for a religious exemption has been reviewed. Your request has been declined."

49.    In or around September 1, 2021, Plaintiff Cesare emailed Ms. LaCascia-Ehlert in regards to the denial of her request and to ask whether there was a "way to contact the religious committee directly?"

50.    On September 2, 2021, Ms. LaCascia-Ehlert responded to Plaintiff Cesare by email stating "To keep confidentially and objectivity both the members of the committee and individuals who submitted exemptions were kept anonymous. The committee's decision is final. I am sorry I cannot provide you with further information. We have provided many resources about the vaccine. Requiring vaccination is consistent with our organizations mandates as we have required flu vaccinations. There is nothing more I can provide you. We hope you take advantage of the information and resources provided to you. Getting the flu and covid vaccine is in the best interest for you, your coworkers, our patients, and vendors."

51.    On September 2, 2021, Plaintiff Cesare complained to Ms. LaCascia-Ehlert regarding the denial of her multiple requests for accommodation for an exemption to the COVID 19 vaccine on multiple grounds (religious, medical and prior accommodations for Plaintiff Cesare' flu vaccine allergy).

52.    On September 2, 2021, Plaintiff Cesare complained to Ms. LaCascia-Ehlert specifically stating that "I have been exempted from the flu vaccine 8+ years now and was able to work at this company."

53.    On September 2, 2021, Plaintiff Cesare complained to Ms. LaCascia-Ehlert that the PACT's committee failed to provide enough information to Plaintiff Cesare for the reasons for the denial of her religious exemption request, specifically stating "I feel as if I should know why I am being declined and their reasoning behind it. Which religion do they practice? Also, why don't they believe in the act that part of the Catholic doctrine in which you should have to follow

8

your conscience. And if your conscience is telling you not to do this, then you're not doing it not just from your conscience perspective, but also from your religious Catholic belief."

54.    On September 2, 2021, Plaintiff Cesare engaged in protected activity under CEFPA and Title VII when she complained to Ms. LaCascia-Ehlert specifically stating "[E]very state is required to accommodate religious exemptions because it is a federal law to do so. Title VII of the U.S. Civil Rights Act prohibits discrimination based on religion. A religious exemption covers you "forever" and you do not need any evidence or proof other than your own sincerely held religious beliefs (or ethical/moral beliefs). It doesn't matter if the vaccines are approved or not. You still have authority over your own body. The government is putting pressure on the businesses. Can the government require women to have hysterectomies and men to have vasectomies because of the "overpopulation crisis"? The law does not require you to belong to any organized religion, church, group, etc. Your own sincerely-held spiritual beliefs that guide your life, your choices, your actions is enough. As a Christian, you are part of the Body of Christ, which does not have a physical building. The Holy Spirit indwells each believer and unites each believer into the Church of Christ."

55.    Plaintiff Cesare also informed PACT that she had natural immunity from her recent COVID 19 infection.

56.    Plaintiff Cesare offered to share more information about her medical records in an interactive process for her medical accommodation request, however PACT failed to engage in the interactive process.

57.    Plaintiff Cesare sent PACT her medical records however PACT failed to take them into consideration for Plaintiff Cesare's request.

58.    Plaintiff Cesare submitted her medical documents and asserted her previously granted

medical accommodation for the flu vaccine allergy.

59.    PACT failed to engage in the interactive process and denied Plaintiff Cesare's request for medical accommodation for the COVID-19 vaccine despite her vaccine allergy and her inability to take other vaccines and natural immunity.

60.    On September 6, 2021, Plaintiff Cesare emailed Ms. LaCascia-Ehlert requesting a follow up to her September 2, 2021 email requesting a response from the PACT's committee on their determination denying Plaintiff Cesare religious accommodation.

61.    On September 7, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Cesare "The committee is not changing their decision."

62.    On September 10, 2021, Plaintiff Cesare again asked Ms. LaCascia-Ehlert via email that she felt slighted by the Committee and needed answers and asked whether Plaintiff Cesare decided to get the vaccine when she would have to get it by because she recently had COVID 19.

63.    Ms. LaCascia-Ehlert failed to respond to Plaintiff Cesare's September 10, 2021 email until September 23, 2021 email when she asked Plaintiff Cesare "I am checking in to see if you have made a decision about covid vaccine."

64.    Plaintiff Cesare responded to Ms. LaCascia-Ehlert on September 24, 2021, stating "Hi Laura [Ms. LaCascia-Ehlert], I'm sorry I've been on vacation. I decided with a heavy heart to not get the vaccination. I truly do not feel comfortable with getting it, and sad to hear other medical practices allow exemptions for both religious and medical beliefs but not from GCC, and I don't know why. With both my religious beliefs and medical condition un-diagnosed I do not feel comfortable getting the vaccine. Furthermore, especially because I was just recently positive with Covid-19. I just truly believe it's not right or humane. I understand you are

following whoever is telling you to do this and I'm sorry."

65.     On September 24, 2021, Ms. LaCascia-Ehlert stated  "I am so sorry to hear this, and absolutely appreciate you telling me and the difficult decision you made. I understand you are on PTO this week." And inquired "Is this your resignation letter or will you be returning to work on Monday [September 27, 2021]?"

66.     Ms. LaCascia-Ehlert harassed and bullied Plaintiff Cesare by asking if she was resigning.

67.     Plaintiff Cesare responded to Ms. LaCascia-Ehlert that "No this not a resignation, I will be returning to work on Monday[September 27, 2021]. I hope you have a great weekend!"

68.     On September 30, 2021, PACT terminated Plaintiff Cesare's employment.

69.     In or around October 2021, Ms. LaCascia-Ehlert confirmed that Plaintiff Cesare submitted a religious exemption request but claimed that she did not submit a medical exemption request and stated "I have gone through our email exchanges and do not see anything where you sent in medical documentation via email nor a medical exemption form. The exemption request you submitted was for religious. I do recall receiving a fax that was faxed to the billing department that was your medical chart. Due to the information in the document coupled with the deadline for exemptions passed and that no medical exemption form was attached, I shredded the document that appeared to be your medical chart. It is not appropriate that be in your file, nor was it reviewed. It is not the responsibility of the organization to review, interpret, and assess your medical issues. A note from a provider is what is required for medical documentation, and that was not submitted. Best of luck!"

70.     PACT failed to interact with Plaintiff Cesare before her termination regarding Plaintiff Cesare's medical request for an accommodation for a COVID 19 vaccine exemption.

71.     Ms. LaCascia-Ehlert admitted to receiving Plaintiff Cesare's medical records from her provider and knew that she submitted written medical exemption in her previous Follow up note and other correspondence, however Ms. LaCascia-Ehlert failed review the medical records and destroyed them and failed to engage in the interactive process with Plaintiff Cesare or allow her to submit a medical note before her termination.

72.     Ms. LaCascia-Ehlert failed to provide Plaintiff Cesare with more time or extend the deadline to submit the compliant documentation for her already initiated medical accommodation request to PACT.

73.     In or around October 2021, Plaintiff Cesare inquired with Ms. LaCascia-Ehlert on the phone regarding whether she was terminated or fired, and Ms. LaCascia-Ehlert confirmed that Plaintiff Cesare was "terminated" and "discharged" from employment with the PACT.

74.     Plaintiff Cesare applied for Connecticut Department of Labor (CT DOL) Unemployment Benefits in October 2021, and PACT falsely responded to the CT DOL for Plaintiff Cesare's unemployment that Plaintiff Cesare "Quit" her employment with PACT.

**Stacy Buffham**

75.     PACT employed Plaintiff Buffham as a "Medical Administrative Specialist" / Administrative Assistant commencing in or about 2011 until on or about September 30, 2021.

76.     Plaintiff Buffham's religion is Christian.

77.     Plaintiff Buffham disclosed to PACT that she was a person of the Christian faith.

78.     In or around August 1, 2021, as referenced above, PACT announced that it would be mandating the COVID-19 vaccine for all of its employees and set a deadline for employee submissions for request for exemptions to the vaccine.

79.    In or around August 2, 2021, Plaintiff Buffham faxed her religious accommodation request to PACT's Human Resources Director, Laura LaCascia-Ehlert ("Ms. LaCascia-Ehlert").

80.    In Plaintiff Buffham's August 2, 2021 request for religious accommodation Plaintiff Buffham expressed to PACT that she could not be vaccinated due to her sincere deeply held religious beliefs such as " I Stacy Buffam am exercising my rights under the First Amendment of the US Constitution to receive Religious Exemption from receiving the Covid 19 vaccination and all further vaccinations. Being a person with strong Christian morals, it is against my religious convictions to accept this injection of a foreign substance into my body. I believe in and follow God and the principles laid out in is Word and I have a deeply held belief that vaccines violate them. I believe my body is a temple for the Holy Spirit."

81.    In Plaintiff Buffham's August 2, 2021 request for religious accommodation Plaintiff Buffham also cited several verses of the Bible to support her sincerely held religious beliefs in favor of her religious exemption to the COVID-19 vaccine.

82.    In Plaintiff Buffham's August 2, 2021 request for religious accommodation Plaintiff Buffham also asserted that she was opposed to CRISPER technology and her religious beliefs to support her request for religious accommodation with scientific data of what in the vaccine she was religious opposed to such as luciferase.  Plaintiff Buffham stated "I believe in an follow God and the principles laid out in His Word and I have a deeply held belief that vaccines violate them."

83.    On August 18, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Buffham at 8:38 AM, regarding her request for religious accommodation stating "The Exemption Committee met and is requiring additional information regarding your religious exemption request. Please provide a letter from your clergy (pastor/reverend/priest) from the place at which you worship. Please

have them answer the following questions in the letter 1) how long you have been an active, standing member of the church and 2) does the religion forbid or preclude you from getting vaccines as part of its core principles? Please have this letter submitted to me no later than Friday August 20, 2021 at 12pm."

84.    On August 18, 2021, at 3:25 PM, Ms. LaCascia-Ehlert harassed Plaintiff Buffham when she emailed Plaintiff Buffham again within the same business day, "Please confirm that you have received this email. thanks."

85.    Plaintiff Buffham was on vacation at the time she received Ms. LaCascia-Ehlert's email, and emailed back the next day on August 19, 2021, stating "In response to your request I have the following to say.... I was raised a Jehovah's Witness but was never baptized into that religious organization so I cannot provide a letter from them or any other religious organization. In fact I don't feel like you need to be part of a religious organization to consider yourself a Christian or to have any of your personal convictions and beliefs questioned or backed up by a pastor, reverend or priest. My beliefs are my beliefs period. I can read and study the Bible on my own with understanding just fine. Jesus said in John 14:26 'But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you.' I do not feel like I need to justify my beliefs to anyone. My beliefs are my beliefs and my body is my body and it is my choice what I put into it. Like I said in my original letter I believe that my body is the temple of the Holy Spirt and it is my God-given responsibility, requirement and right to protect what goes into it. 1 Corinthians 3:16,17, 6:19. Many of the Covid19 vaccines originated with studies that relied on fetal tissues and most of the vaccines contain parts of aborted unborn children. I will not be injecting myself with tissue from unborn children. Jesus is the sole spiritual and religious

authority that I recognize on my health decisions. He warned us of the pestilences that would happen during this time frame and the great deception concerning 'pharmakia'. Revelation 18:23 'And the light of a candle shall shine no more at all in thee; and the voice of the bridegroom and of the bride shall be heard no more at all in thee: for thy merchants were the great men of the earth; for by thy sorceries were all nations deceived.' Healing and protection comes from my Lord and Savior Jesus Christ. Hebrews 13: 6,7 says 'So that we may boldly say, The Lord is my helper, and I will not fear what man shall do unto me. Remember them which have the rule over you, who have spoken unto you the word of God: whose faith follow, considering the end of their conversation.' I have been with GCC for 10 years now and I know my worth within the company. I have great reviews year after year which I am sure you can obtain if you would like to review them. I also have access to work from home away from everyone if deemed necessary which could have been considered if my letter wasn't forced to be anonymous per policy. The last thing I would like to mention is that I have been out of the office on vacation since Thursday of last week and scheduled to return this coming Tuesday. I happened to check my work email from home to see if I received a response on my request and saw your email. If I didn't have access from home I wouldn't have even seen the email until I returned on the 24th which is past the requested response date you gave me. Due to the lack of my response to your email I'm sure you reached out to my supervisor to verify my presence in the office considering the urgency of this matter and are already aware that I am out of the office on vacation."

86.    On or about August 24, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Buffham to inform her that PACT had denied her religious accommodation request and stated "On behalf of the exemption committee, they have reviewed your documents and responses requesting a religious exemption. Your request has been declined."

87.     Plaintiff Buffham responded via email to Ms. LaCascia-Ehlert on August 24, 2021 stating that "I just want to make it very clear that I am extremely uncomfortable that this company is trying to force me into making a personal medical decision in order to keep my job. Nobody knows what the long term effects to getting this vaccine are. It's simply too new of a vaccine. What is the legal standing that this company has to force me to do this? What data are you using to justify taking away my freedom to choose what is best for my body? And if I were to get this vaccine and have an adverse reaction to it what is your policy? Are you going to take care of my family if something were to happen to me? I came into the office every day during the lock down risking getting Covid for what? For this company to turn around and threaten my employment because I'm scared to get a vaccine that hasn't been out long enough to know what long term side effects will be. Not to mention all the side effects people are already having. This is wrong! I want to keep my job! 10 years I've been with this company. I wasn't approved to get weekly testing done. I wasn't approved to work from home. Why? Why am I getting treated like this after 10 years of dedicated employment with this company?"

88.     n August 30, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Buffham to tell her that the PACT was standing by its decision to deny her religious accommodation request and that "Please know you are a valued member of PACT MSO, LLC. This decision is not being made at a personal level and is not being done specifically to you. It has nothing to do with your reviews, your performance, your hard work, nor your dedication. Your tenure and dedication means a lot to me, the owners, and management. We care about you and truly believe the best safety for all in the organization is to receive the covid vaccine" and that there was not alternative for her other than to get the COVID-19 vaccine because "The decision is not going to change."

89.     On August 30, 2021, Plaintiff Buffham emailed Ms. LaCascia-Ehlert to ask for a written

reason from the PACT's religious accommodation request committee for the COVID 19 vaccine of why Plaintiff Buffham's request for accommodation was denied. Plaintiff Buffham stated "appreciate your response to my email. I still would like a letter from the committee explaining the reason for denying my personal request for religious exemption. In the response please include the reason that weekly testing was not an option for me as well as not being allowed to work from home. I understand that you are trying to make this decision seem like it's not personal but it is. If this company truly cared about me after 10 years something could have been worked out. It's not like I wasn't willing to wear a mask at all times and get tested weekly. I know someone who submitted a very similar letter to Yale and she was approved for her religious exemption but for some unknown "non-personal" reason my request was denied. Unfortunately I do not believe having a conversation with you over the phone will help ease my mind into getting this vaccine nor make me change my mind in any way so I will respectfully decline. I also want to mention that you did not answer my questions. You have threatened my employment with this company if I do not comply so again I take this very personal! And when I say you I don't mean you personally. Here are the questions I need answered in writing please……What is the legal standing that this company has to force me to do this? What data are you using to justify taking away my freedom to choose what is best for my body? And if I were to get this vaccine and have an adverse reaction to it what is your policy? Are you going to take care of my family if something were to happen to me? This is my livelihood we are talking about. The way I support my family so I take this very serious and yes it is extremely personal!"

90.    On September 1, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Buffham back stating "The committee's decision is final. I am sorry I cannot provide you with further information. We have

provided many resources about the vaccine. Requiring vaccination is consistent with our organizations mandates as we have required flu vaccinations. There is nothing more I can provide you. We hope you take advantage of the information and resources provided to you. Getting the flu and covid vaccine is in the best interest for you, your coworkers, our patients, and vendors."

91.    On September 7, 2021, Plaintiff Buffham emailed Ms. LaCascia-Ehlert stating "Respectfully put I did not ask for more information. I asked for a letter from the committee explaining why my personal request for religious exemption was denied. I have reviewed the information that was provided and have also done my own research hence why I put in a religious exemption form in the first place."

92.    On September 10, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Buffham back stating "I am reaching out to find out what you have decided about the vaccine. If you decide to get the vaccine before the 9/30 5pm deadline you would have to get J&J as I believe yesterday or today is the deadline so that you can get the 2nd shot before 9/30. Please let me know your decision."

93.    On September 14, 2021, Plaintiff Buffham emailed Ms. LaCascia-Ehlert stating that "I have not decided whether I am going to get the vaccine yet because I am still waiting for a letter from the committee explaining the reason my religious exemption was denied and why I wasn't allowed to do weekly testing."

94.    On September 14, 2021, Ms. LaCascia-Ehlert emailed Plaintiff Buffham "As I have stated before, they are not supplying a letter to you."

95.    On September 14, 2021, Plaintiff Buffham emailed Ms. LaCascia-Ehlert to complain about her harsh treatment during the religious accommodation request process and the PACT's willingness to provide Plaintiff Buffham with any information on the reasons for her denial,

stating "So let me get this straight…. This company offered the option for religious exemption stating that if you are approved you would be allowed weekly testing and then denied everyone who submitted an exemption form without even having the respect for the employee to give a reason for the denial? If this company supports and trusts the Covid 19 vaccines as much as they claim to by forcing all their employees to get it or be fired then why wouldn't they be open to an employee going to weekly testing? If you trust the science then you should be protected by the vaccine you're pushing right? So why wouldn't this company be open to weekly testing when it was offered and stated at the bottom of the religious exemption form that was put out by Yvette? After all these years I've been with this company and I can't be offered weekly testing? And you refuse to provide a reason why. And on top of that I'm sure you're going to try to deny my right to receive unemployment as well right? After 10 years with this company claiming to appreciate my hard work this is how I get treated. Oh but as you stated it's not personal right Laura? Well I'll be making my decision at some point. As stated in Yvette's email I have until 9/30 to submit proof."

96.    On September 14, 2021, Plaintiff Buffham emailed PACT's Dr. David Simon to complain about Ms. LaCascia-Ehlert to complain her harsh treatment during the religious accommodation request process and the PACT's willingness to provide Plaintiff Buffham with any information on the reasons for her denial, stating "Here is a copy of the correspondence between Laura and I. I'm sorry but it is not right that my religious exemption was denied without any reason and that I was not allowed to go for weekly testing. Even the President just announced that weekly testing would be an option. I have worked very hard for this company for 10 years and I love my job but I will not stand for anyone taking away my right to choose what is right for my body. All I asked for was an explanation to why I wasn't allowed weekly testing. If others in the

company are vaccinated and protected by this vaccine then why couldn't I go for weekly testing and wait until I felt comfortable getting vaccinated. This is unfair and shows me that this company doesn't care about the employees working for them.

97.    On September 20, 2021, Plaintiff Buffham emailed Ms. LaCascia-Ehlert to inform her that "I have decided that I am not comfortable getting the Covid-19 vaccine due to reasons previously stated. I would LOVE to keep my job so I am hoping that weekly testing can be reconsidered as an option for me. Please let me know if something can be worked rather than firing me over this because I really LOVE my job and the people I work with and not for nothing I'm actually very good at what I do here at GCC. I will keep coming into the office each day until I'm told not to."

98.    On September 20, 2021, Ms. LaCascia-Ehlert responded to Plaintiff Buffham "Thank you for letting me know that you have decided not to get the covid vaccine. As of now, those employees who do not receive the covid vaccine by 9/30/21 @ 5pm will be separated from the company. Should this change, I will let you know."

99.    On September 21, 2021, Plaintiff Buffham asked Ms. LaCascia-Ehlert for clarification regarding her future employment status "Can you please explain what separated from the company means? Does that mean that I am fired as of 9/30/21 @ 5 pm and not to come into the office on 10/1/21?"

100.    On September 21, 2021, Ms. LaCascia-Ehlert responded to Plaintiff Buffham, "You will be terminated on September 30 should you not provide documentation of receiving the covid vaccine."

101.    On September 30, 2021, PACT terminated Plaintiff Buffham's employment.

**PACT's Failure to Grant Plaintiff's Accommodations**

102.   It is apparent that in PACT's fervor to comply with COVID-19 vaccine mandates they left individual employees like Plaintiffs who have sought accommodations/exemptions (on religious or medical bases) by the wayside by summarily denying requests for accommodation and terminating Plaintiffs' employment.

103.   PACT failed to act in good faith here to comply with the ADA and CEFPA as it pertains to processing requests for reasonable accommodations.

104.   No hardship would have occurred to PACT had they let Plaintiffs continue to work unvaccinated with a mask and daily testing.

105.   PACT's lack of communication and boilerplate responses to Plaintiffs' individualized request for exemption and subsequent complaints of disparate treatment due to religion and disability, has caused Plaintiffs emotional distress.

**AS AND FOR A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII
(AGAINST EMPLOYER DEFENDANTS ONLY)**

106.   Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

107.   Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hireor to discharge any individual, or otherwise to discriminate against any individual with respect toher compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

108.   Defendant the employer Defendants engaged in unlawful employment practices prohibitedby 42 U.S.C. §2000e et seq., by allowing discrimination based on religion by not

allowing her to submit a religious accommodation request to the COVID-19 vaccine mandate and causing a hostile work environment and was denied reasonable religious accommodations.

109.    The employer Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS AND FOR A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(AGAINST EMPLOYER DEFENDANTS ONLY)**

110.    Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

111.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of her employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

112.    The employer Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiffs with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of the employer Defendants.

113.    The employer Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS AND FOR A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER ADA**
**(AGAINST EMPLOYER DEFENDANTS ONLY)**

114.  Plaintiff Cesare repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

115. Plaintiff Cesare that the employer Defendant violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

116. ADA SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

117. Defendants violated the section cited herein by failing to consider Plaintiff Cesare requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff Cesare because of disabilities.

118. Defendants violated the above and Plaintiff Cesare suffered numerous damages as a result.

### AS AND FOR A FOURTH CAUSE OF ACTION
### FOR RETALIATION UNDER ADA
### (AGAINST EMPLOYER DEFENDANTS ONLY)

119. Plaintiff Cesare repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

120. ADA SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

121. The employer Defendants violated the above and Plaintiff Cesare suffered numerous damages as a result.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**DISCRIMINATION  IN VIOLATION**
**OF CONN. GEN. STAT. §46a-60(a)(4)**
**(AGAINST EMPLOYER DEFENDANTS ONLY)**

122.   Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

123.   Plaintiffs was treated in a disparate manner in the terms and conditions of her employment, on the basis of religion, disability (as to Plaintiff Cesare only) and prior complaints and were denied reasonable accommodations.

124.   The employer Defendants' conduct is unlawful and in violation of CFEPA.

125.   As a result of the employer Defendants' unlawful conduct, Plaintiffs has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

126.   Plaintiffs seeks damages as a result of Defendants' unlawful conduct.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION**
**OF CONN. GEN. STAT. §46a-60(a)(4)**
**(AGAINST EMPLOYER DEFENDANTS ONLY)**

127.   Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

128.   Plaintiffs engaged in protected activity under the CFEPA by complaining to Defendant about harassment and discrimination.

129.   Defendant created a hostile work environment due to Plaintiffs' employment because of

her prior complaints.

130. The adverse employment actions to which Plaintiffs were subjected were the direct consequence and in retaliation for Plaintiffs' opposition to unlawful discrimination.

131. The Defendant's actions violate CFEPA.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION, RETENTION AND TRAINING**
**(AGAINST ALL DEFENDANTS)**

132. Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

133. Defendants are responsible for the training and supervision of all employees, agents, contractors and subcontractors who manage the premises including but not limited to the employee health and safety and have a duty to not engage in tortious acts from occurring on the premises.

134. The actions of individually named Defendant and employees involved in Plaintiffs' termination and harassment and failure to accommodate Plaintiffs are the responsibility of and are imputed to and binding upon Defendants.

135. Defendants failure to provide reasoning for the denial of the Plaintiffs' religious accommodation requests and the processing of Plaintiff's medical request were negligent.

136.  Defendants had a duty to prevent employees/servants/agents, including individual Defendants Drs. from acting or engaging in unlawful and/or tortious conduct.

137. The Defendants' negligence in hiring, supervising, training and retaining employees/servants/agents that engaged in tortious and/or otherwise unlawful conduct was the direct and proximate cause of Plaintiffs' severe injuries.

138. Plaintiffs has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

139. Plaintiffs repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**NEGLIGENCE RESPONDEAT SUPERIOR**
**(AGAINST ALL DEFENDANTS)**

140. Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

141. Defendants commenced a pattern of reckless, intentional, negligent, discriminatory, harassing and retaliatory proceedings against the Plaintiffs culminating in the termination of Plaintiffs.

142. Defendants knew or should have known that their employees / servants had the propensity to inflict emotional distress on Plaintiffs.

143. As a direct and proximate result of Defendants' tortious conduct, Plaintiffs has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

144. As described above, the individual Defendants willfully intended to cause Plaintiffs emotional distress.

**AS AND FOR A NINTH CAUSE OF ACTION**
**FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

145. Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

146. As described above, Defendants knew or should have known that they intended to cause Plaintiffs emotional distress.

147. Defendants' conduct was extreme and outrageous.

148. Plaintiffs was in the zone of danger from Defendants' actions, and it could be foreseeable that their actions could or would cause emotional distress upon the Plaintiffs.

149. Defendants in perpetrating the above-described conduct, inflicted emotional distress as a result of terminating Plaintiffs, and during the termination process.

150. Defendants' actions were harmful and offensive to the Plaintiffs and would be harmful and offensive to any reasonable person.

151. Defendants' actions did in fact cause the Plaintiffs to suffer emotional distress.

152. As a result of Defendants' actions Plaintiffs has suffered emotional distress.

## AS AND FOR THE TENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

153. Plaintiffs repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

154. As described above, Defendants willfully intended to cause Plaintiffs emotional distress.

155. Defendants' conduct was extreme and outrageous.

156. Defendants in perpetrating the above-described conduct, inflicted emotional distress on Plaintiffs and failed to provide Plaintiffs a safe workplace.

157. Defendants' actions were harmful and offensive to the Plaintiffs and would be harmful and offensive to any reasonable person.

158. Defendants have caused the Plaintiffs to suffer emotional distress.

## DEMAND FOR A JURY TRIAL

159.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on

all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendant as follows:

A.      A judgment declaring that the practices complained of herein are unlawful and

inwillful violation of the aforementioned federal; and state laws;

B.      Awarding Plaintiffs compensatory damages;

C.      Awarding Plaintiffs punitive damages;

D.      Awarding Plaintiffs costs and disbursements incurred in connection with this

action, including reasonable attorneys' fees, expert witness fees, and other costs;

E.      Pre-judgment and post-judgment interest, as provided by law; and

F.      Granting Plaintiffs further relief as this Court finds necessary and proper.

Dated:  New York, New York
        February 24, 2023


                        Respectfully submitted,


                        By: *Christopher J. Berlingieri*
                        CHRISTOPHER J. BERLINGIERI, ESQ. (ct 30335)
                        BERLINGIERI LAW, PLLC
                        Attorney for Plaintiffs
                        244 Fifth Avenue, Suite F276
                        New York, New York 10001
                        Tel.:    (347) 766-5185
                        Fax:    (914) 730-1044
                        Email: cjb@nyctlaw.com

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 11/30/2022

**To:** Stacy Buffham
172 Wilcox Rd
Milford, CT 06460

Charge No: 16A-2022-00515

EEOC Representative and email:    Amon Kinsey
Supervisory Investigator
amon.kinsey@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC is closing this charge because: Charging Party is pursuing claims in another forum.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
11/30/2022

Timothy Riera
Acting District Director

**Cc:**

Christopher  Berlingieri
244 Fifth Ave  Suite F276
New York, NY 10001

Pact Mso Llc
323 East Main Street 1 B
Branford, CT 06405

Please retain this notice for your records.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/23/2022

**To:** Amanda Cesare
140 Thompson Street Apt 13f
East Haven, CT 06513

Charge No: 16A-2022-00234

EEOC Representative and email:   Amon Kinsey
Supervisory Investigator
amon.kinsey@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: Charging Party is pursuing claims in another forum.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
12/23/2022

Timothy Riera
Acting District Director

**Cc:**

Christopher Berlingieri
BERLINGIERI LAW
244 Fifth Ave Suite F276
New York, NY 10001

Pact Mso Llc
323 East Main Street, Suite 1B
Branford, CT 06405

Please retain this notice for your records.

# EXHIBIT B



**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

<u>**Stacy Buffham**</u>
COMPLAINANT

CHRO No. 2230386

vs.

EEOC No. 16A-2022-00515

<u>**PACT MSO LLC**</u>
RESPONDENT

## <u>RELEASE OF JURISDICTION</u>

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

**DATE: 11/29/2022**

*Tanya A. Hughes*
Tanya A. Hughes, Executive Director

Service:
Complainant's Attorney:     Christopher J. Berlingieri, Esq., via Email: cjb@nyctlaw.com
Respondent's Attorney:      Michael Harrington, Esq., via Email: mharrington@fordharrison.com

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Amanda Cesare
**COMPLAINANT**

                                        CHRO No. 2230246

vs.                                 EEOC No. 16A202200234

PACT MCO LLC
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served.  Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT.  § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

*Tanya A. Hughes*
_____

**DATE:**  December 22, 2022         Tanya A. Hughes, Executive Director

Service:
Complainant: amandacesare3223@gmail.com
Complainant's attorney: cjb@nyctlaw.com
Respondent:  llacasia@pactmd.com
Respondent's attorney: mharrington@fordharrison.com

.