UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMANDA CESARE and STACY BUFFHAM, | ) ) | 3:23-CV-253 (SVN) |
|    *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| PACT MSO, LLC and LAURA LACASCIA-EHLERT, in her personal and professional capacities, | ) ) ) ) | September 11, 2023 |
|    *Defendants*. | ) | |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiffs Amanda Cesare and Stacy Buffham have brought various claims against their former employer PACT, MSO LLC, and its human resources director Laura LaCascia-Ehlert, related to their terminations for failure to receive the COVID-19 vaccine absent an approved religious or medical exemption. Defendants move to dismiss all claims against LaCascia-Ehlert, and all but Plaintiffs' religious discrimination claims against PACT. The Court finds that Plaintiffs have abandoned all but one claim Defendants move to dismiss by failing to respond to Defendants' arguments for dismissal of those claims. The remaining claim Defendants have moved to dismiss, intentional infliction of emotional distress, is not plausibly alleged. The Court therefore GRANTS Defendants' motion to dismiss in its entirety. Therefore, only the religious discrimination claims against PACT remain, and LaCascia-Ehlert is dismissed from this action.

    **I.**      **FACTUAL BACKGROUND**

Plaintiffs' complaint alleges the following relevant facts, which the Court accepts as true for purposes of deciding Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). PACT operates and manages medical practices in the state of Connecticut and, before

their terminations, employed Cesare as a medical assistant and Buffham as a medical administrative specialist. Compl., ECF No. 1 ¶¶ 16–19, 75. LaCascia-Ehlert was PACT's human resources director during all relevant times. *Id.* ¶ 13.

In August of 2021, PACT announced that it would require all employees to receive the COVID-19 vaccine absent an approved medical or religious exemption. *Id.* ¶ 30. Employees were instructed to request an exemption by 5 p.m. on August 13, 2021, and told that PACT would provide a response to the request by August 20, 2021. *Id.* ¶¶ 34, 36. Plaintiffs later learned that the August 13 deadline was firm, *id.* ¶¶ 35, 72; and that, after being received, their requests were anonymized and forwarded to a review committee. *Id.* ¶ 50. The committee members' identities were kept anonymous and the committee's decision was final and unreviewable. *Id.*

      A.  <u>Plaintiff Cesare</u>

On August 12, Cesare, who is Catholic, submitted a religious exemption request. *Id.* ¶¶ 21, 32. On an unknown date, but after the August 13 deadline, Cesare submitted a medical exemption request as well, based on a standing allergy to eggs, which are used in many vaccines, and vaccines generally. *Id.* ¶¶ 25–29, 34, 52. LaCascia-Ehlert emailed Cesare on August 17, stating that the medical exemption request was received by human resources, after being incorrectly faxed to the billing department, but that the request would not be forwarded to the review committee because it was past the deadline, did not include the medical exemption form, and did not include a doctor's note. *Id.* ¶¶ 34–35, 69.

A few days later, on August 23, Cesare emailed LaCascia-Ehlert inquiring on the status of her religious exemption request, as the August 20 date for a response had passed. *Id.* ¶ 37. LaCascia-Ehlert responded quickly that Cesare had not submitted a religious exemption request at all. *Id.* ¶ 38. In response, Cesare told LaCascia-Ehlert that she had emailed her request on August

2

12, and resent that email along with a "[f]ollow up note." *Id.* ¶ 39. The follow-up note re-requested both the religious exemption and a medical exemption. *Id.* ¶ 40.

Ignoring the follow-up medical request, LaCascia-Ehlert emailed Cesare requesting a letter from her priest in connection with her religious exemption request. *Id.* ¶¶ 41, 69. Cesare informed her that she and her fiancé had tested positive for COVID-19, so she would be unable to see her priest to secure the letter. *Id.* ¶ 42. In response, LaCascia-Ehlert requested that Cesare speak to her priest on the phone and have the priest "fax over the letter directly" by August 30, to which Cesare again responded she would be unable to see her priest before then due to quarantine. *Id.* ¶¶ 43–45. On or around August 30, LaCascia-Ehlert followed up and asked Cesare whether she planned on meeting with the priest when she was able to do so, to which Cesare that she would meet her priest as soon as possible. *Id.* ¶ 46. Cesare then promptly provided the letter. *Id.* ¶ 47.

Soon after, Cesare was informed her religious exemption request was denied, that she could not contact the review committee directly, that the decision was final, and no further information would be provided. *Id.* ¶¶ 48–50. After expressing her disappointment, Cesare asked LaCascia-Ehlert for more information, and LaCascia-Ehlert responded: "[t]he committee is not changing their decision." *Id.* ¶¶ 60–61. Cesare sent another follow up email on September 10, reiterating her unhappiness and asking by when she needed to get the vaccine, should she decide to get it, since she recently had tested positive for COVID. *Id.* ¶ 62. LaCascia-Ehlert did not respond. *Id.* ¶ 63.

Rather, on September 23, LaCascia-Ehlert emailed Cesare checking in on her decision. *Id.* Cesare responded the next day, informing LaCascia-Ehlert that she decided not to get the vaccine given "both my religious beliefs and medical condition un-diagnosed" and that it is "not right or humane" given how she recently tested positive for COVID. *Id.* ¶ 64. The next day, LaCascia-

Ehlert stated that she is "so sorry to hear this" and asked if the September 23 email was Cesare's "resignation letter," or if she would be returning to work that Monday, September 27. *Id.* ¶ 65. Cesare informed her that she was not resigning and would indeed show up to work. *Id.* ¶ 67. On September 30, PACT officially "terminated" and "discharged" Cesare's employment. *Id.* ¶¶ 68, 73.

B. Plaintiff Buffham

On or around August 2, Buffham, who is Christian, faxed LaCascia-Ehlert a religious exemption request stating that it was "against [her] religious convictions to accept this injection of a foreign substance into [her] body." *Id.* ¶¶ 76, 79–82.[1]

Afterwards, on August 18, LaCascia-Ehlert emailed Buffham stating that the committee reviewed her request and requires a letter from Buffham's clergy in support and that said letter should be submitted by August 20 at noon. *Id.* ¶ 83. Later that day, LaCascia-Ehlert sent a follow up email asking that Buffham confirm receipt. *Id.* ¶ 84. Buffham responded the next day, explaining she could not provide a letter because she is not formally part of a religious organization. *Id.* ¶ 85. She provided an additional explanation of her religious beliefs and stated that she has access to work from home. *Id.*

On or around August 24, LaCascia-Ehlert informed Buffham that her request for a religious exemption was denied. *Id.* ¶ 86. Buffham responded asking for an explanation. *Id.* ¶ 87. On August 30, LaCascia-Ehlert informed her that the committee was standing by its decision and that the decision "is not personal" and "ha[d] nothing to do with [Buffham's] reviews, [her] performance, nor [her] dedication" over the last ten years. *Id.* ¶ 88. Buffham once again asked for an explanation and expressed her willingness to get a mask and be tested weekly, *id.* ¶ 89, to

---

[1] Buffham did not seek a medical exemption.

which LaCascia-Ehlert again answered the committee's decision was final and a further explanation would not be offered, *id.* ¶ 90.

On September 10, LaCascia-Ehlert asked Buffham whether she decided to get the vaccine, to which Buffham responded that she is undecided as she is still waiting for a letter from the committee explaining the reasons for the denial of her religious exemption request and why she was not allowed to do weekly testing in lieu of receiving the vaccine. *Id.* ¶¶ 92–93. LaCascia-Ehlert reiterated once again that the company will not be providing such a letter. *Id.* ¶ 94. Buffham ultimately informed LaCascia-Ehlert that she would not be getting the vaccine, and LaCascia-Ehlert responded that "those employees who do not receive the covid vaccine by 9/30/21 @ 5 pm will be separated from the company.  Should this change, I will let you know." *Id.* ¶ 98. After Buffham asked for clarification on what "separated" means, LaCascia-Ehlert informed her it meant she would be terminated. *Id.* ¶¶ 99–100. Accordingly, Buffham was terminated on September 30. *Id.* ¶ 101.

## II. PROCEDURAL BACKGROUND

Cesare and Buffham first filed claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and Equal Employment Opportunity Commission ("EEOC") on or about November 9, 2021, and February 9, 2022, respectively. *Id.* ¶ 7. The CHRO issued a release of jurisdiction to Cesare on December 22, 2022, and to Buffham on November 29, 2022. Ex. B, ECF No. 1 at 35–36. The EEOC issued its notices of right to sue the very next day. Ex. A, ECF No. 1 at 32, 30.

Plaintiffs subsequently sued PACT, their former employer, and LaCascia-Ehlert, PACT's human resources director, in federal court on February 24, 2023, raising ten claims: (1) religious discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, against PACT; (2) retaliation under Title

VII, 42 U.S.C. § 2000e-3(a), against PACT; (3) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, against PACT (Cesare only); (4) retaliation under the ADA, 42 U.S.C. § 12203, against PACT (Cesare only); (5) violations of Connecticut's Fair Employment Practices Act ("CEFPA"), Conn. Gen. Stat. § 46a-60(a)(4) *et seq.*, against PACT; (6) retaliation under CEFPA, Conn. Gen. Stat. § 46a-60(a)(4), against PACT; (7) negligent supervision, retention, and training against PACT and LaCascia-Ehlert; (8) negligence against PACT and LaCascia-Ehlert;[2] (9) negligent infliction of emotional distress ("NIED") against PACT and LaCascia-Ehlert; and (10) intentional infliction of emotional distress ("IIED") against PACT and LaCascia-Ehlert.[3] *See generally* ECF No. 1. Defendants have moved to dismiss all claims against LaCascia-Ehlert, and all but Plaintiffs' religious discrimination claims against PACT (Count One and, in part, Count Five). Defs.' Mem. in Support of Mot. to Dismiss, ECF No. 22 at 2.[4]

### III.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as

---

[2] Specifically, Plaintiffs assert "negligence respondeat superior," which is not an independent cause of action. ECF No. 1 at 26. The Court will instead refer to this count simply as "negligence" for purposes of deciding this motion.
[3] Plaintiffs assert counts one through six "against employer defendants only," and the remaining counts "against all defendants." *Compare* ECF No. 1 at 21–24 *with* 25–27. Defendants interpret "against employer defendants" to mean the claim is against PACT only. *See* Defs.' Mot. to Dismiss, ECF No. 21 at 1–2. Because this is a reasonable interpretation and Plaintiffs seem to adopt this framing in their opposition, *see* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss, ECF No. 30 at 1–2, the Court will consider counts one through six as asserted against PACT only, and counts seven through ten as asserted against both Defendants.
[4] Defendants' reply states that Defendants "moved for summary judgment on 9 of the 10 counts" and later repeats that Defendants "moved for summary judgment as to Plaintiffs' claim of disability discrimination under state law." Reply Mem. in Support of Defs.' Mot. to Dismiss, ECF No. 31 at 1, 1 n.1. This is not the case, and the Court will review the present motion as a motion to dismiss.

true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**IV.    DISCUSSION**

For the reasons explained below, the Court treats all of the claims Defendants have moved to dismiss, except for Plaintiffs' IIED claim, as abandoned. The Court then finds that Plaintiffs have not plausibly pleaded the remaining IIED claim because they have not alleged extreme or outrageous conduct. Defendants' motion to dismiss is therefore granted in its entirety.

A. <u>Plaintiffs' Abandonment of Several Claims</u>

To reiterate, Defendants have moved to dismiss all claims against LaCascia-Ehlert, and all but Plaintiffs' religious discrimination claims against PACT (Count One and, in part, Count Five). The Court begins with Plaintiffs' express statement that they do not oppose Defendants' motion with regards to Counts Two through Six, alleging retaliation and disability discrimination, and Plaintiffs' subsequent failure to offer any arguments against dismissing Counts Seven through Nine.  The Court will treat all as abandoned.

First, Plaintiffs expressly state that they do "not oppose" Defendants' motion "as to the Retaliation counts under Title VII and state law against PACT [Counts Two and Six]; the Disability Discrimination under the ADA against PACT [Count Three]; Retaliation under the ADA against PACT [Count Four]; Religious and Disability Discrimination under state law against PACT [Count Five]; [and] Retaliation under state law against PACT [Count Six]." ECF No. 30 at 1–2.  Plaintiffs note, however, that Defendant has not moved to dismiss the part of Count Five that alleges religious discrimination. *Id.* at 2 n.2.  Given this express abandonment, the Court dismisses Counts Two, Three, Four, Five (only insofar as it alleges disability discrimination by Plaintiff Cesare under state law), and Six.

Plaintiffs' express statement that it does not object to the dismissal of these counts would apparently leave Counts Seven through Ten ripe for a ruling on Defendants' motion to dismiss. But Plaintiffs have entirely failed to address Counts Seven (negligent supervision, retention, and training) and Eight (negligence) in their opposition papers. *See generally* ECF No. 30.  Instead, Plaintiffs only identify two claims that they will "defend" in their introduction:  specifically, "Plaintiff [sic] plausibly alleges claims for Negligent Infliction of Emotional Distress against

8

PACT and Ms. LaCascia-Ehlert [Count Nine]; and Intentional Infliction of Emotional Distress against PACT and Ms. LaCascia-Ehlert [Count Ten]." *Id.* at 2.

Despite identifying Count Nine (NIED) and Count Ten (IIED) in their introduction, however, Plaintiffs do not actually offer any arguments against the dismissal of Count Nine. The sentence quoted above from Plaintiffs' introduction contains the opposition's single mention, let alone defense, of their NIED claim. Instead, Plaintiffs only substantively oppose dismissal of the IIED claim, under the sole argumentative subheading, "Plaintiff [sic] has Plausibly Pleaded a Cognizable Claim or Intentional Infliction Of Emotional Distress Against Defendant Amazon[5] [sic]." *See id.* at 8.

Because "district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage," the Court will exercise its discretion and similarly deem Counts Seven through Nine abandoned here, and grant Defendants' motion on that basis. *Colbert v. Rio Tinto PLC*, 824 Fed. Appx. 5, 12 (2d Cir. 2020) (summary order) (citing *DoubleLineCapital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2019)); *see also Almareh v. Mayorkas*, No. 20-CV-11024 (VEC), 2021 WL 4896180, at *2 (S.D.N.Y. Oct. 20, 2021) (collecting cases).

### B. Plaintiffs' Remaining IIED Claim

This leaves only Count Ten, Plaintiffs' IIED claim, for the Court's consideration. A plaintiff claiming IIED must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's

---

[5] It is apparent from this mention of Amazon, which is not involved in this case, and from the failure to include any argument concerning the negligent infliction of emotional distress claim despite the brief's introduction, that Plaintiffs' counsel has carelessly drafted Plaintiffs' opposition brief. The Court urges counsel to devote closer attention to his filings in the future.

conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was severe." *Appleton v. Board of Educ.*, 254 Conn. 205, 210 (2000) (internal quotation marks and citation omitted). Because Plaintiffs have not alleged conduct that was extreme and outrageous, in that it did not "go beyond all possible bounds of decency" nor was "atrocious, and utterly intolerable in a civilized community," the Court will dismiss the IIED claim. *See id.* at 211.

The conduct Plaintiffs allege falls into two categories: the conduct leading up to the terminations, when Plaintiffs were applying for exemptions and communicating with LaCascia-Ehlert, and their subsequent terminations for failure to receive the COVID-19 vaccine. Leading up to the terminations, Defendants requested additional documentation from clergy members, failed to provide additional explanations of the committee's denials of Plaintiffs' exemption requests, and communicated with Plaintiffs through LaCascia-Ehlert. Plaintiffs do not, and cannot, provide any legal support for the proposition that any of this pre-termination conduct was extreme and outrageous. *See* ECF No. 30 at 9–11. Defendants' policies were in line with those adopted by countless other employers across the country during the COVID-19 pandemic and, therefore, plainly were not "utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 211. Plaintiffs' allegations that LaCascia-Ehlert "harassed" and "bullied" them throughout this process, *see* ECF No. 1 ¶¶ 66, 84, are conclusory, and unsupported by the actual email quotes, where LaCascia-Ehlert communicates in a professional and respectful manner, *see*, *e.g.*, ECF No. 1 ¶¶ 90, 98. In their opposition, Plaintiffs argue that they were "subjected to public ridicule for making it known that they were vehemently opposed to the vaccine for religious reasons," *see* ECF No. 30 at 10, but there are simply no allegations that Defendants in any way subjected Plaintiffs to public ridicule.

As for the termination itself, the "mere act of firing an employee, even if wrongfully motivated," is not extreme and outrageous conduct that can form the basis of an IIED claim, because it "does not transgress the bounds of socially tolerable behavior." *Gillians v. Vivanco-Small*, 128 Conn. App. 207, 213 (2011) (citing *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 89 (1997)); *see also Muniz v. Kravis*, 59 Conn. App. 704, 710 (2000); *Grasso v. Connecticut Hospice, Inc.*, 138 Conn. App. 759, 775 (2012). Therefore, Plaintiffs' termination, even with the improper motives Plaintiffs allege, does not constitute extreme and outrageous conduct. There is therefore no plausible IIED claim.

## V. CONCLUSION

Defendants' motion to dismiss Counts Two, Three, Four, Five (as to Cesare's disability discrimination claim only), Six, Seven, Eight, Nine, and Ten is GRANTED. Only Plaintiffs' religious discrimination claims against PACT, Count One and part of Count Five, remain. LaCascia-Ehlert is hereby DISMISSED from this action.

**SO ORDERED** at Hartford, Connecticut, this 11th day of September, 2023.

                                               /s/ Sarala V. Nagala
                                               SARALA V. NAGALA
                                               UNITED STATES DISTRICT JUDGE