UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
---------------------------------------------------------------  x
AMANDA CESARE, and STACY BUFFHAM,                     :
                                                      :
                              Plaintiffs,             :
                                                      :        MEMORANDUM &
              -against-                               :        ORDER
                                                      :
PACT MSO, LLC.,                                       :        3:23-CV-253 (VDO)
                                                      :
                              Defendant.              :
---------------------------------------------------------------  x
```

**VERNON D. OLIVER**, United States District Judge:

This suit concerns alleged religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), in which two individuals' employment were terminated for their failure to comply with their employer's COVID-19 vaccination requirements. Before the Court is Defendant's motion for summary judgment on the ground that no reasonable factfinder could conclude that Plaintiffs have sincerely held religious beliefs which prevent them from taking the vaccine. After careful consideration of the record, the Court **denies** the motion.

## I.   BACKGROUND[1]

### A.   The Parties

Defendant PACT MSO, LLC ("PACT") operates and manages medical practices in Connecticut, including locations in Hamden, Milford, and Guilford. (Pls.' 56(a) ¶ 1; Answer ¶ 17.)

---

[1] The facts are taken from Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s 56(a)," ECF No. 45), Plaintiffs' Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Pls.' 56(a)," ECF No. 52), the Complaint, and the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described are in dispute only to the extent indicated.

When vaccines for the COVID-19 virus became generally available in 2021, in an effort to keep staff, patients, and medical providers safe, PACT's Board of Directors began requiring employees to receive a COVID-19 vaccine. (Pls.' 56(a) ¶ 2.) Under PACT's policy, unless exempted for a medical or religious reason, employees had to be fully vaccinated against COVID-19 by September 30, 2021. (*Id.* ¶ 3.) All exemption requests were submitted anonymously to a committee comprised of seven medical providers. (*Id.* ¶ 4.) With respect to religious-based exemption requests, the Exemption Review Committee evaluated whether the employee had a sincerely held religious belief that precluded him/her from receiving the COVID vaccine, as opposed to a personal objection or hesitancy about the vaccine. (*Id.* ¶ 5.)

Plaintiffs, residents of Connecticut, are former employees of PACT who requested a religious-based exemption from PACT's inoculation requirement. (Answer ¶¶ 9–10; Pls.' 56(a) ¶ 7.) Plaintiffs primarily worked at PACT's Hamden, Connecticut location. (Answer ¶ 18.) Both of the plaintiffs' religious exemption requests were denied by PACT. (Pls.' 56(a) ¶¶ 23, 37.)

### B.   Pre-Suit Events Involving Amanda Cesare

Amanda Cesare worked for PACT as a medical assistant, commencing in September 2012 until her termination in September 2021. (Answer ¶ 19.) On August 30, 2021, Ms. Cesare requested to be exempt from the vaccine mandate because she was Catholic. (Pls.' 56(a) ¶ 9.) In her letter to the Review Committee, Ms. Cesare wrote "I believe in 'My rights, My body' and have been practicing this well over 15 years now." (*Id.* ¶ 10.) Ms. Cesare also wrote to the Review Committee: "I truly and honestly do not feel safe nor comfortable getting any vaccines. I do not believe in putting any foreign substances into my body. I believe in health and wellness." (*Id.* ¶ 11.) Ms. Cesare also represented to PACT that a core part of Catholicism

includes life having dignity from the moment of conception, and therefore, any medical experimentation involving fetal cells violates that dignity in a profound manner. (ECF No. 44-6 at 3.) Ms. Cesare felt that the "CDC did not have enough information at the time for [her] to make a decision to get the vaccine." (Pls.' 56(a) ¶ 12.) Although Ms. Cesare testified that she was a parishioner at Lady of Pompeii, she never spoke with Father Patrick, the pastor of the parish, whom she considered "her priest," or Father Wayne, the other priest assigned to that parish, regarding the vaccine. (*Id.* ¶ 16.) Ms. Cesare never submitted a letter to PACT from a Catholic priest and, instead purchased a letter online from David Hall, who purports to be a pastor of the True Hope Ministry in California. (*Id.* ¶¶ 18–19.) Ms. Cesare recognizes the Pope as the head of the Catholic Church. (*Id.* ¶ 20.)

### C.    Pre-Suit Events Involving Stacey Buffham

Plaintiff Stacy Buffham worked for PACT as a Medical Administrative Specialist and Administrative Assistant, commencing in 2011 until her termination in September 2021. (Answer ¶ 75.) On August 2, 2021, Ms. Buffham requested an exemption from the vaccine mandate. (Pls.' 56(a) ¶ 25.) Plaintiff Buffham belongs to the Christian faith without a denomination or church and bases her beliefs in her own understanding from her reading of the scriptures. (*Id.* ¶ 26.) Ms. Buffham wrote to the Review Committee that "[b]eing a person with strong Christian morals it is against [her] religious convictions to accept this injection of a foreign substance into [her] body" and that she had a "right to protect the physical integrity of [her] body against unclean food and injections." (*Id.* ¶ 27.) Ms. Buffham considered the COVID-19 vaccine to be unclean due to the use of CRISPR technology in the vaccine's development, and because she mistakenly believed it contained Luciferase, a naturally occurring enzyme. (*Id.* ¶ 31–33) Ms. Buffham also represented to PACT that she would not

inject herself with COVID-19 vaccine because the vaccines originated with studies that relied on fetal tissues and contained tissue from unborn children. (Answer ¶ 85.) Ms. Buffham represented to PACT that it is her God-given responsibility to protect her body, which is a temple for the Holy Spirit. (*Id.* ¶¶ 80, 85.)

Ms. Buffham had previously received the flu vaccine and does not oppose taking medicine generally. (Pls.' 56(a) ¶¶ 28–29.) Ms. Buffham does not have any dietary restrictions due to her religious beliefs. (*Id.* ¶ 30.)

The Exemption Review Committee gave Ms. Buffham (and others) an opportunity to provide additional information in support of her request. (*Id.* ¶ 34.) On August 19, 2021, in response to the Committee's request for additional supporting materials, Ms. Buffham wrote in part: "I do not feel like I need to justify my beliefs to anyone. My beliefs are my beliefs and my body is my body and it is my choice what I put into it." (*Id.* ¶ 35.) Ms. Buffham expressed concern about potential side-effects of the COVID-19 vaccine. (*Id.* ¶ 36.)

### D.    Procedural History

In February 2023, Plaintiffs filed the Complaint. (ECF No. 1.) On September 11, 2023, the Honorable Sarala V. Nagala dismissed all claims other than Plaintiffs' religious discrimination claims under Title VII and CFEPA against PACT, thus dismissing Laura LaCascia-Ehlert from this action. (ECF No. 38 (*Cesare v. PACT MSO, LLC*, No. 3:23-CV-253 (SVN), 2023 WL 5893429 (D. Conn. Sept. 11, 2023).)

On November 27, 2023, Defendant PACT filed this motion for summary judgment on the remaining claims. (ECF No. 44.) Plaintiffs opposed, and Defendant replied. (ECF Nos. 53–54.) PACT filed the Answer in May 2024. (ECF No. 56.)

## II.    <u>LEGAL STANDARD</u>

### A.    Summary Judgment

In ruling on summary judgment, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs 'if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 72 (2d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (alteration in original). "No genuine dispute of material fact exists when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001)). The burden is on the moving party to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

"Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party 'must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35–36 (2d Cir. 2008) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)) (alteration in original). A court must "view the evidence in the light most favorable to the party opposing summary judgment, draw all reasonable inferences in favor of that party, and eschew credibility assessments." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019) (internal citation and quotation marks omitted).

**B.      Failure to Accommodate Under Title VII and the CFEPA**

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."   42 U.S.C. § 2000e(j). Similarly, under the CFEPA, "[i]t shall be a discriminatory practice . . . [f]or an employer . . . to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate . . . because of the individual's . . . religious creed." CONN. GEN. STAT. § 46a-60(b)(1).

Discrimination claims under Connecticut law are analyzed "in the same manner as federal courts evaluate federal discrimination claims." *Jackson v. Water Pollution Control Auth. of Bridgeport*, 900 A.2d 498, 508 n.11 (Conn. 2006). "Title VII requires employers to offer reasonable religious accommodations in certain circumstances." *Kane v. De Blasio*, 19 F.4th 152, 175 (2d Cir. 2021). "The rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015); *see also Trans World Airlines. Inc. v. Hardison*, 432 U.S. 63, 74 (1977) (explaining that it is "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees."). "[W]hen an employee has a genuine religious practice that conflicts with a requirement of

employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). While an employer must grant an accommodation that does not cause "undue hardship on the conduct of the employer's business," 42 U.S.C. § 2000e(j), an employer is not obligated to offer an accommodation the employee prefers to avoid Title VII liability for religious discrimination. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021).

## III.   **DISCUSSION**[2]

To survive summary judgment, the plaintiffs must proffer evidence to present triable issues of fact in the *prima facie* case of religious discrimination with respect to the following elements: "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)). If the *prima facie* case is established, "the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship." *Knight*, 275 F.3d at 167. An "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

---

[2] The Court examines both the federal claim and state claim together for simplicity. *See, e.g.*, *Dawson v. Sec. Servs. of Connecticut Inc.*, No. 3:20-CV-01310 (SVN), 2022 WL 17477601, at *4 (D. Conn. Dec. 6, 2022).

Defendant moves for summary judgment with respect to Plaintiffs' *prima facie* case on the ground that they do not have bona fide religious beliefs conflicting with an employment requirement. This inquiry is two-fold: "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). The questions as "to whether any particular Plaintiff's beliefs are sincerely held and religious in nature," are "questions of fact." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, No. 22-cv-01585 (LJL), 2023 WL 2366916, at *3 (S.D.N.Y. Mar. 6, 2023). Defendant contends that Plaintiffs do not have a sincerely held belief regarding the COVID-19 vaccine.

As an initial matter, the Court finds inapposite Defendant's reliance on the indicia described in *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981) to assert that Plaintiffs' beliefs are not religious. The Second Circuit has rejected the "narrow definition of 'religious belief' promulgated by" the *Africa* court and held that a court must recognize a more "expansive conception of religious belief." *Patrick*, 745 F.2d at 156, 158; *see generally id.* (reversing summary judgment where a district court relied on *Africa* to find that a plaintiff's belief was not religious). The Court also finds that Plaintiffs go too far in asserting that it is abhorrent to scrutinize whether a party's belief is rooted in religion. The Second Circuit has held that an individual's conviction, even if sincere and strong, does not "automatically mean that the belief is religious" and instead, could be found to be based on secular or scientific principles. *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir.1988). Nevertheless, as explained below, summary judgment is precluded because an application of Second Circuit law shows that a reasonable factfinder could conclude that Plaintiffs have a sincerely held religious belief.

## A.      Sincerity

A "[s]incerity analysis seeks to determine an adherent's good faith in the expression of [her] religious belief." *Patrick*, 745 F.2d at 157. "It is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity—as opposed, of course, to the verity—of someone's religious beliefs in both the free exercise context . . . and the Title VII context." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) (internal citations omitted). Courts must be mindful to "differentiat[e] between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Patrick*, 745 F.2d at 157. "Sincerity analysis is exceedingly amorphous, requiring the factfinder to delve into the claimant's most veiled motivations and vigilantly separate the issue of sincerity from the factfinder's perception of the religious nature of the claimant's beliefs." *Id.* A sincerity analysis is "most useful where extrinsic evidence is evaluated," as such evidence can show whether an adherent "act[ed] in a manner inconsistent with that belief" or "that the adherent materially gains by fraudulently hiding secular interests behind a veil of religious doctrine." *Int'l Soc. for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 441 (2d Cir. 1981). Conflicting statements by the adherent could enable a reasonable jury to doubt the sincerity of the beliefs. *See Jackson v. Mann*, 196 F.3d 316, 322 (2d Cir. 1999) (reversing summary judgment where there were genuine issues of material fact regarding whether a plaintiff's beliefs were sincerely held). "[A]ssessing a claimant's sincerity of belief demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross-examination." *Patrick*, 745 F.2d at 157. "A believer's sincerity is also evaluated in light of the religion's size and history." *Barber*, 650 F.2d at 441. "The burden on plaintiff [to support sincerity] is not a heavy one" and courts "must avoid any test that might

'turn on the fact finder's own idea of what a religion should resemble.'" *Philbrook*, 757 F.2d at 482.

There are triable issues on whether Plaintiffs' objections to the vaccine were sincere. Notably, Defendant does not contend that either Plaintiff's belief in Christianity is insincere. While "conclusory and self-serving testimony that [a claimant] had a religious belief and that it was held sincerely" would not suffice to survive summary judgment, that is not the case here. *Gardner-Alfred*, 2023 WL 6214863, at *16. As to Plaintiff Cesare, she submitted a written religious accommodation request form which unequivocally stated that she was seeking accommodation to vaccine mandate due to her faith. (ECF No. 44-6 at 3 (stating that she had been a Catholic for all her life and writing: "After extreme consideration and battling in my head about my religious rights I wish to not be mandated to get the vaccination and pray that I will not lose my occupation over this.").) In response to Defendant's request for a letter from a pastor to support her request for religious exemption, Ms. Cesare submitted one from a non-Catholic pastor to reaffirm her opposition to taking the COVID-19 vaccine. (Pls.' 56(a) ¶¶ 18–19.) While a reasonable factfinder could find it problematic that Ms. Cesare submitted a letter from a non-Catholic priest, it is not for the Court to weigh the credibility of such evidence at summary judgment.

Plaintiff Buffham similarly unequivocally requested a religious exemption. In August 2021, Ms. Buffham requested a religious exemption in a letter which purported to quote scriptures and stated "[b]eing a person with strong Christian morals, it is against my religious convictions to accept this injection of a foreign substance into my body." (ECF No. 44-12 at 3.) While Ms. Buffham did not submit a letter from a pastor in response to Defendant's request for additional information, Ms. Buffham again purported to rely on scriptures in her email to

support her request. (ECF No. 44-13 at 2 (stating that "I can read and study the Bible on my own with understanding just fine" and purporting to offer such quotes in support of her request).) Defendant's contention that the quotes from the Bible shows that Plaintiff Buffham's beliefs were insincere may prevail before a jury, but that requires a factfinder to intensively weigh the evidence and assess a witness's credibility. Based on the current record, the Court cannot conclude that Defendant has met the burden at summary judgment.

Accordingly, there is extrinsic evidence here upon which a reasonable factfinder could find Plaintiffs' beliefs to be sincere, thus creating a genuine dispute.

### B.    Religious

"[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit . . . protection." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). "Impulses prompted by dictates of conscience as well as those engendered by divine commands are . . . safeguarded against secular intervention, so long as the claimant conceives of the beliefs as religious in nature." *Patrick*, 745 F.2d at 158. The resolution of whether a belief is religious does not "turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others . . . ." *Thomas*, 450 U.S. at 714. Instead, the question turns on determining whether the beliefs are in a plaintiff's "own scheme of things, religious." *Patrick*, 745 F.2d at 158. Courts may analyze whether a plaintiff's belief involves an "ultimate concern." *Barber*, 650 F.2d at 440. "A concern is ultimate when it is more than intellectual." *Id.* (internal quotation marks and citation omitted). "A concern is more than intellectual when a believer would categorically 'disregard elementary self-interest in preference to transgressing its tenets.'" *Id.* (quoting *United States v. Kauten*, 133 F.2d 703, 708

(2d Cir. 1943)). "The Second Circuit has also indicated that 'philosophical and personal' belief systems are not religion, in spite of the fact that these belief systems may be held with 'strong conviction' and inform critical life choices." *Caviezel v. Great Neck Pub. Schs.*, 701 F. Supp. 2d 414, 429 (E.D.N.Y. 2010) (quoting *Mason,* 851 F.2d 47 at 52). "[T]o be religious, a belief need not necessarily contemplate an orthodox or traditional God; rather, it is sufficient if the belief 'occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God.'" *Mason*, 851 F.2d at 51 (quoting *United States v. Seeger*, 380 U.S. 163, 165 (1965)). "[A] touchstone of a religion is the believer's categorical 'disregard of elementary self-interest in preferences to transgressing the religious tenets.'" *United States v. Allen*, 760 F.2d 447, 451 (2d Cir.1985) (quoting *Kauten*, 133 F.2d at 708) (alterations in original). A party's claim "that his belief is an essential part of a religious faith must be given great weight." *Seeger*, 380 U.S. at 184.

Plaintiffs have presented sufficient evidence to show genuine disputes as to whether their opposition to the COVID-19 vaccine are rooted in religious belief. The Court finds the plaintiffs' representations that they were directed by fundamental or ultimate matters of their faith and belief in God to oppose the COVID-19 vaccine to be a paramount consideration. Defendant's attempt to undermine the plaintiffs' alleged religious convictions rests on truncated quotes from the record. As noted in the opposition brief, there is evidence showing that Plaintiffs' objections to Defendant's vaccination policy is based upon their beliefs that fetal cells were used in the research and development of the COVID-19 vaccine.[3] Plaintiff

---

[3] As acknowledged by the Second Circuit, public health authorities have explained that fetal cell lines have been used "for testing in the research and development phase of the mRNA (Pfizer-

Cesare submitted a written religious accommodation request form, where she states: "It is a core part of [Catholicism] that life has dignity from the moment of conception. To kill such life and use it for medical experimentation violates that dignity in a profound manner." (ECF No. 44-6 at 3.) The letter from a non-Catholic priest submitted on Ms. Cesare's behalf represents that it is "appalling" to Christians, such as Cesare, that fetal tissue is used in the development of COVID-19 vaccines. (ECF No. 44-9 at 6.)

Ms. Buffham's correspondences with PACT similarly mentions that her healthcare decisions are directed by religious beliefs. She represented that "Jesus is the sole spiritual and religious authority that I recognize on my health decisions." (Answer ¶ 85.) Ms. Buffham relies on her interpretation of the Bible to conclude that she must protect her body from unclean substances, such as the COVID-19 vaccine as fetal cells were purportedly used in the vaccine's development. (ECF No. 44-13 at 2 ("Covid19 vaccines originated with studies that relied on fetal tissues and most of the vaccines contain parts of aborted unborn children. I will not be injecting myself with tissue from unborn children.").) Moreover, in multiple emails, Ms. Buffham represented to PACT that it is her God-given responsibility to protect her body, which is a temple for the Holy Spirit. (Answer ¶¶ 80, 85.)

When the circumstances so warrant, a court can deny relief on the record where no reasonable factfinder can infer that a plaintiff's belief is rooted in religion. *New Mexico v. Hebrew Acad. Long Beach*, 155 F. Supp. 3d 247, 258–59 (E.D.N.Y. 2016) (plaintiffs had "selective personal belief[s]" against the practice of vaccinating, not fundamental religious

---

BioNTech and Moderna) COVID-19 vaccines and in the production of the Johnson & Johnson COVID-19 vaccine." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 277 (2d Cir. 2021).

beliefs); *Caviezel*, 701 F. Supp. 2d at 429 (plaintiffs "genuinely and sincerely opposed" vaccinations but failed to prove their objections were "'religious' in nature"). For example, at oral argument, Defendant cites to an instance where the Second Circuit affirmed a judgment entered after a bench trial, where the district court found the plaintiffs' opposition to immunization was "based, not on religious grounds, but on scientific and secular theories." *Mason*, 851 F.2d at 50–51. Ample evidence in the trial record supported the finding that the plaintiffs' beliefs were simply an embodiment of secular chiropractic ethics, including testimony where one plaintiff "expressed his fear of the possible side effects from immunization in medical terms, agreeing that, to a large extent, his position was based on scientific evidence and personal theory." *Id.* at 51. But this case has not been tried and thus, *Mason* does not demand dismissal at this posture.

Dismissal at the summary judgment stage is appropriate where there is no concrete evidence to support that a plaintiff's belief is rooted in religion. *See Gardner-Alfred*, 2023 WL 6214863, at *15 (granting summary judgment where the plaintiff's claimed religious beliefs regarding the COVID-19 vaccine "were anything other than contrived" because a plaintiff appeared to adopt her views on the eve of her employer's vaccination policy and the evidence included conclusory assertions and self-serving testimony). This case is distinguishable as there is documentary evidence that a reasonable factfinder can use to infer that a claimant's opposition to the COVID-19 vaccine is an essential part of their religious faith, including correspondences indicating a nexus between their objections to the vaccine and their religious convictions. It may be that Plaintiffs' beliefs are not primarily rooted in religion, as illustrated

by their deposition testimonies and counsel's representations at oral argument.[4] But viewed through the proper lens and with all reasonable inferences in the plaintiffs' favor, the correspondences alone are sufficient to preclude summary judgment. Summary judgment is precluded where there are genuine disputes about whether a bona fide religious belief is a secondary, or even tertiary, reason for a party's convictions.

Accordingly, there are genuine disputes on whether Plaintiffs' opposition to the COVID-19 vaccine were rooted in religious belief.

## IV.    <u>CONCLUSION</u>

For the reasons described above, Defendant's motion for summary judgment (ECF No. 44) is **DENIED**.

**SO ORDERED.**

Hartford, Connecticut
June 4, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
|United States District Judge

---

[4] The enzyme Luciferase provides a useful example. One plaintiff in this case, according to counsel at argument, mistook the enzyme to relate in some way to "Lucifer," an evil figure in the Abrahamic religions. Because she thought the vaccine contained Luciferase (it does not) she rejected the vaccine entirely—perhaps fearful of injecting evil itself. That mistaken understanding illuminates how religion might be, at best, tertiary to the plaintiff's belief.